```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

| | | |
|---|---|---|
| JAMES B. NOBLE, M.D., Administrator of the Estate of Amy Noble, | ) ) ) ) ) | Civil Action No. 5:08-354-JMH |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| LEE COUNTY, KENTUCKY, et al., | ) ) ) | |
| Defendants. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendants' motion to exclude the opinions of Plaintiff's expert witness, E. Don Nelson [RN 64]. Plaintiff responded [RN 85] and Defendants replied [RN 94]. This matter is now ripe for review. For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion.

## I. BACKGROUND

In this action, Plaintiff, James B. Noble, M.D., as Administrator of the Estate of Amy Noble ("Plaintiff"), alleges that Defendants, Three Forks Regional Jail Authority and others ("Defendants"), violated Amy Noble's ("Ms. Noble") civil rights while she was incarcerated in the Three Forks Regional Detention Center (the "Jail") in Beatyville, Kentucky. Specifically, Plaintiff alleges that Defendants violated Ms. Noble's Eighth, Tenth, and Fourteenth Amendment rights. Plaintiff also states

claims for negligence, gross negligence, and outrage.

On November 15, 2007, Ms. Noble and her husband, Carl Noble, were arrested for public intoxication and taken to the Jail. Upon her arrival at the Jail, Ms. Noble was searched and placed in an observation cell. The next morning, November 16, 2007, upon discovering that Ms. Noble was not breathing, Jail employees called 911 and performed CPR on Ms. Noble. An ambulance arrived a short time after the 911 called was placed. Ms. Noble was pronounced dead at the scene and her body was released to the Lee County Coroner.

Following Ms. Noble's death, Captain Keith Combs escorted Carl Noble from his cell to another location in the Jail where he was informed by Captain Combs, the coroner, the Jail chaplain, and other deputy jailers that Ms. Noble had died. Upon being asked if Ms. Noble had any medical conditions of which he was aware, Carl Noble informed the Jail staff that he and Ms. Noble had consumed a quantity of methadone and clonazepam while they were being transported to the Jail by the arresting officer.

An autopsy report from the State Medical Examiner listed Ms. Noble's cause of death as acute methadone intoxication. A toxicology report confirmed the presence of methadone, methadone metabolites, and cannabinoids in Ms. Noble's body at the time of her death. In his deposition, Carl Noble testified that Ms. Noble had smoked two marijuana cigarettes during the hours immediately

2

preceding their arrest on November 15, 2007, and that she had taken an additional quantity of clonazepam earlier that same day. Carl Noble also testified that several days after Ms. Noble's death, he learned that Ms. Noble had consumed 67 Lyrica pills during the 48 hours prior to her death.

Plaintiff has identified E. Don Nelson, Pharm.D, ("Nelson") as his expert witness regarding pharmacological and toxicological matters in this case. Nelson rendered his opinions in a letter to Plaintiff's counsel dated October 29, 2009 ("Nelson's letter"). [RN 49, Ex. 2.] Nelson was deposed by Defendants' counsel on February 15, 2010. [RN 64, Ex. A.] In the motion *sub judice*, Defendants argue that "[m]ost if not all of Nelson's opinions must be excluded from the trial of this case, either because they are based on facts that are not part of the record, or because they exceed the scope of testimony permitted by an expert such as Nelson." [RN 64 at 2.]

## II. STANDARD OF REVIEW

Plaintiff, as the proponent of Dr. Nelson's testimony, must establish its admissibility by "a preponderance of proof." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n.10 (1993) (citing Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). This Court is charged with the task of "gatekeeping" and determining whether expert testimony is "not only relevant, but reliable." *Id.* at 589; *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147 (1999).

Federal Rule 702 addresses whether an expert is qualified to testify. *See Legg v. Chopra*, 286 F.3d 286, 290-91 (6th Cir. 2002). Federal Rule 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court in *Daubert* held that the trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

### III. DISCUSSION

Defendants argue that Nelson's opinions must be excluded in whole or in part because they are based on facts not in the record and because they exceed the scope of testimony allowed by an expert witness such as Nelson. First, Defendants argue that Nelson's opinions should be stricken because they are based on the following facts which are not in the record: that a one inch scar on the interior of Ms. Noble's arm was a "needle track" resulting from the use of intravenous drugs; that Ms. Noble appeared sedated and drowsy at the Jail; and that Ms. Noble's husband, with whom she was

4

arrested, was a known drug user. Regardless of whether Nelson is qualified to testify as to the presence of what may or may not have been a needle track on Ms. Noble's arm or her husband's status as a drug user or drug addict, such information is irrelevant to the material issues in this case. Furthermore, Nelson's opinions are not dependent on these facts. Accordingly, Nelson may not testify that the scar on Ms. Noble's arm was a needle track, nor can he testify regarding Carl Noble's status or reputation as a drug addict. Nelson may rely on the fact that Ms. Noble appeared intoxicated and sedated upon her arrival at the Jail, as she was arrested for public intoxication and the Jail's own records indicate that she was "heavily intoxicated and unable to rationally communicate." [RN 85, Ex. 1.]

A review of Nelson's Curriculum Vitae reveals that he is highly qualified in the fields of pharmacology, the effects of drugs on the body, and pharmacokinetics, the study of pharmacological substances in the body including their absorption, metabolism, and elimination, a fact which Defendants concede. [RN 64 at 5.] Nelson is qualified to testify and may testify regarding the symptoms associated with drug, specifically methadone, ingestion and overdose, and such information will aid the trier of fact in determining material issues in this case. Nelson may testify that certain symptoms Ms. Noble displayed on the night she was taken to the Jail, including "being heavily intoxicated and

unable to rationally communicate," [RN 85, Ex. 1] and being unable to dress herself without assistance, are consistent with drug use. Nelson may further testify that once it is determined that a person has consumed a large quantity of methadone, there are certain steps which can be taken to prevent an overdose from resulting in death, including administering a prescription medication that can counteract the effects of methadone.

While Nelson is qualified to opine as to the effects of drugs on the human body, he is not qualified to opine that Ms. Noble's death was unnecessary and preventable, as he is not a medical doctor and cannot express such an opinion within a reasonable degree of medical certainty. Nelson also may not offer testimony such as that contained in statements numbered 7-12 of his opinion letter. These opinions concern certain penalogical policies Nelson finds unacceptable, and are not specific to this case.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

That Defendants' Motion to Exclude the Opinions of E. Don Nelson [RN 64] shall be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**, as set forth above.

This the 7th day of April, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge